IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00090-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     HUGUES BELLEVUE II,
     a/k/a "Hughes Bellevue,"

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Andrea Surratt, Assistant United States Attorney for the District of Colorado, and the defendant, HUGUES BELLEVUE II, personally and by counsel, Kevin McGreevy, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.  This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I.   AGREEMENT

### A. Defendant's Plea of Guilty:

The defendant agrees to:

(1)    plead guilty to Count One of the Indictment charging a violation of distribution of 10 grams or more of a mixture or substance containing a detectable amount of cycolopropl fentanyl and fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) & (b)(1)(B);

Court's Exhibit

1

(2)     waive certain appellate and collateral attack rights, as explained in detail below; and

(3)     agree not to contest forfeiture as more fully described below.

## B. Government's Obligations:

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). The government agrees to dismiss Counts Two, Three and Four of the Indictment. The government agrees not to bring other charges against the defendant based on information currently known to the United States Attorney's Office, District of Colorado, concerning the defendant's distribution of controlled substances on the darknet in 2018 and 2019, nor will the government allege relevant conduct related to drug quantities not referenced in this agreement.  Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, potentially file a superseding indictment.

The government further agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a).  If the defendant does not engage in prohibited conduct or otherwise implicate USSG § 3C1.1, the government agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

## C. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)     the sentence exceeds the maximum penalty provided in the statutes of conviction as described above in paragraph I.A.1.

(2)     the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 29; or

(3)     the government appeals the sentence imposed.

If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255. This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)     the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)      the defendant was deprived of the effective assistance of counsel; or

(3)      the defendant was prejudiced by prosecutorial misconduct.

**D. Forfeiture of Assets:**

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily  any and all assets and property, or portions thereof, subject to forfeiture, pursuant to the forfeiture provisions in the Indictment, whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere.  The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.   The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters.  Having

been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the below-described property, which was seized from the defendant for evidentiary purposes, and which is currently in the custody or control of the U.S. Postal Inspection Service, was lawfully seized and that it is evidence, contraband, or fruits of the crimes to which the defendant is pleading guilty.  The defendant, as sole and rightful owner, relinquishes and abandons all claims, title, and interest the defendant has in such property with the understanding and consent that the U.S. Postal Inspection Service may dispose of the property without further obligations. The specific property includes the following items seized during a search of the defendant's residence on February 25, 2020:

- Rose/white Apple iPhone SE, A1662, S/N: DX3S78LTH2XQ
- Black Apple iPhone XS, A2104, IMEI: 355089087755637
- ZTE cell phone S/N: 320375837926
- LG Cell phone S/N: 606CYJZ27380
- Black Apple iPhone 8, A1863, S/N: F4GVJMNEJC6C
- Silver Asus laptop S/N: H3NLCX076636137
- HP laptop, S/N: 5CD84006ZC, w/ 4 thumb drives and black power cord
- Multiple San Disk thumb drivers

## II.    ELEMENTS OF THE OFFENSES

The parties agree that the elements of the offense to which the defendant is pleading guilty are, as to Count One:

(1) the defendant knowingly or intentionally possessed a controlled substance as charged;

(2) the substance was in fact 10 grams or more of a mixture or substance containing a detectable amount of cycolopropl fentanyl and fentanyl;

(3) the defendant possessed the substance with the intent to distribute it (or did, in fact, distribute it).

## III.    STATUTORY PENALTIES

The maximum penalties for a violation of Count One of the Indictment is not less than 5 years' imprisonment, not more than 40 years' imprisonment, not less than 4 years' supervised release, not more than life supervised release, not more than a $5,000,000 fine (or both), and a $100 mandatory victim's fund assessment fee.

## IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States, or confined indefinitely if there is no country to which the defendant may be deported, denied future admission into the United States, and/or to be denied citizenship.

## V.    STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those

considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the government would be able to prove the following facts at trial.

Between late 2018 and February 2020, the defendant advertised and sold controlled substances on various darknet marketplaces using various different darknet monikers.  The Indictment relates to four different undercover purchases of controlled substances from the defendant on the darknet.  For each of these purchases, the defendant lived in California and the undercover officer (the "UC") was located in the District of Colorado and received the controlled substances at an undercover mailbox in the District of Colorado.

<u>Count One</u>: On or about December 13, 2018, the UC ordered "Heroin Nasal Spray"—which the UC believed to be fentanyl based on how it was advertised by the defendant—from the defendant on the darknet.  On or about December 22, 2018, the order was delivered to a UC address in Denver, CO.  The substance in the parcel was tested and determined to be 30.695 grams of a liquid containing cyclopropyl fentanyl. Cyclopropyl fentanyl is an "analogue[] of [fentanyl]" for purposes of 21 U.S.C. § 841(b)(1)(vi).

In addition to the above undercover purchase, the following undercover

purchases were completed with the defendant and constitute relevant conduct. On or about April 2, 2019, the UC ordered a variety of controlled substances from the defendant on the darknet, some of which the UC believed to be fentanyl. On or about April 10, 2019, the order was delivered to a UC address in Denver, CO. The substances in the parcel was tested and determined to be black tar heroin weighing 1.117 grams, one yellow pill containing Doxepin weighing 0.245 grams, and one blue counterfeit Oxycodone Hydrochloride pill containing fentanyl weighing approximately 0.134 grams.

On or about April 16, 2019, the UC ordered "Heroin Nasal Spray" from the defendant on the darknet. As before, the UC believed that he was ordering fentanyl. On or about April 22, 2019, the order was delivered to a UC address in Denver, CO. The substances in the parcel were tested and determined to be 29.538 grams of a liquid containing furanyl fentanyl, a powder containing cyclopropyl fentanyl weighing 0.046 grams, and a pill containing 0.2471 grams of Clonazolam. Furanyl fentanyl is an "analogue[] of [fentanyl]" for purposes of 21 U.S.C. § 841(b)(1)(vi).

On or about June 28, 2019, the UC had an undercover conversation with the defendant on a darknet marketplace. The defendant instructed the UC to move the conversation to a separate encrypted chat platform. The UC subsequently ordered drugs from the defendant on the encrypted chat platform. On or about July 11, 2019, the order was delivered to a UC address in Denver, CO. The substances in the parcel were tested and determined to be liquid furanyl fentanyl weighing approximately 33.723 grams, powder fentanyl weighing 0.605 grams, blue pills containing fentanyl weighing approximately 0.7314 grams, and four tablets of green alprazolam pills weighing

approximately 0.823 grams.

On or about September 12, 2018, a different undercover officer made a purchase from the defendant on the darknet.  This undercover officer—who was located outside of the District of Colorado—received this parcel to a UC mailbox.  The parcel contained a substance containing 61.2 grams of cyclopropyl fentanyl.

In August 2019, the defendant ordered two parcels containing fentanyl to his home in California.  One of these parcels was seized by Customs and Border Protection and contained 47.18 grams of a mixture and substance containing fentanyl in the form of fentanyl patches.  The other parcel was seized by law enforcement and searched pursuant to a search warrant and was determined to contain 25.4 grams of powder fentanyl.  The defendant admits that he ordered these substances with the intent to distribute them.

On or about February 25, 2020, a search warrant was executed at the defendant's home in California.  During the search, among other things, officers located nasal spray bottles; shipping supplies such as USPS mailing envelopes, labels with tracking numbers, and packaging materials; mylar bags used for packaging drugs; and a bitcoin wallet with an address used by the defendant on the darknet.  During the search, officers also located 22.3 grams of 100% pure methamphetamine and 751 tablets of alprazolam.  The defendant admits that he possessed these substances with the intent to distribute them.

The parties agree the above referenced undercover purchases, and the controlled substances located during the execution of the search warrant constitute the entirety of the relevant conduct for purposes of the Guidelines range calculation

pursuant to U.S.S.G. § 1B1.3.

## VI.    ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate.  The parties understand that the government also has an independent obligation to assist the Court in making an accurate determination of the correct guideline range.  To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

a) Under U.S.S.G § 2D1.1 the base offense level is computed based on total drug amount constituting relevant conduct pursuant to U.S.S.G. § 1B1.3, which is outlined in Table A, below.  The defendant is responsible for converted drug weight of 2,184.31 kg. Pursuant to U.S.S.G. § 2D1.1(c)(5), the defendant's base offense level is 30.

b) Pursuant to U.S.S.G. § 2D1.1(b)(7), two levels are added because the defendant distributed a controlled substance through mass-marketed means by an interactive computer service.

c) The adjusted offense level is 32.

d)   Pursuant to U.S.S.G. § 3E1.1(a) and (b), three levels are subtracted because the defendant accepted responsibility.

e)   The parties agree that the guideline provision requiring a two level offense level enhancement pursuant to U.S.S.G. § 2D1.1(b)(12) for maintaining a premise for purposes of distributing controlled substances does not apply.

f)   The parties agree that the four level enhancement pursuant to U.S.S.G. § 2D1.1(b)(13) for a defendant who knowingly misrepresents or markets a substance that contains fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue does not apply.

g)   The resulting total offense level is 29.

h)   The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions.  The parties believe the defendant is in criminal history category III.

i)   The career offender/criminal livelihood/armed career criminal adjustments do not apply.

j)   The advisory guideline range resulting from these calculations is 108-135 months.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 87 months (bottom of Category I) to 188 months (top of Category VI).  The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

k)   Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $30,000 to $5,000,000 plus applicable interest and penalties.

l)   Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term must be at least four years and no more than life.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less

than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 8/6/2021

Hugues Bellevue II
Defendant

Date: 8/6/2021

Kevin McGreevy
Attorney for Defendant

Date: 08/06/2021

Andrea Surratt
Assistant U.S. Attorney

| TABLE A | | | |
|---|---|---|---|
| **Substance** | **Weight** | **Source** | **Converted drug weight** |
| Cyclopropyl fent | 61.2 grams | 09/12/18 UC purchase | 612 kg |
| Cyclopropyl fent | 30.695 grams | 12/13/18 UC purchase | 306.95 kg |
| Heroin | 1.117 grams | 04/02/19 UC purchase | 1.117 kg |
| Doxepin | 1 tablet = 0.245 grams | 04/02/19 UC purchase | Not scheduled |
| Fentanyl | 0.134 grams | 04/02/19 UC purchase | 0.335 kg |
| Clonazolam | 1 tablet = 0.2471 grams | 04/16/19 UC purchase | Not scheduled |
| Heron/Fent/Cyclopropyl Fent | 0.046 grams | 04/16/19 UC purchase | 0.46 kg |
| Furanyl/Fluorofuranyl Fentanyl | 29.538 grams | 04/16/19 UC purchase | 295.38 kg |
| Furanyl/Fluorofuranyl Fentanyl | 33.723 grams | 06/28/19 UC purchase | 337.23 kg |
| Fentanyl | 0.605 grams | 06/28/19 UC purchase | 1.5125 kg |
| Alprazolam | 4 tabs = 0.823 grams | 06/28/19 UC purchase | 0.25 grams = 0.00025 kg |
| Fentanyl | 0.7314 grams | 06/28/19 UC purchase | 1.8285 kg |
| Fentanyl patches | 47.18 grams | Seized parcel August 2019 | 117.95 kg |
| Fentanyl | 25.4 grams | Seized parcel August 2019 | 63.5 kg |
| Methamphetamine | 22.3 grams (100% purity) | 02/25/20 residential SW | 446.0 kg |
| Flualprazolam | 822 tabs = 301.3 grams | 02/25/20 residential SW | Not scheduled |
| Alprazolam | 396 tabs = 129.7 grams | 02/25/20 residential SW | 24.75 grams = 0.02475 kg |
| Alprazolam | 355 tabs = 93.2 grams | 02/25/20 residential SW | 22.1875 grams = 0.0221875 kg |