IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00090-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. HUGHES BELLEVUE II,

    Defendant.

## GOVERNMENT'S SENTENCING STATEMENT

    The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits the following sentencing statement with respect to defendant Hughes Bellevue II. For the reasons described below, the Government respectfully requests that the Court sentence the defendant to 108 months' imprisonment, which is the bottom of the defendant's Guidelines range.

### Facts

    For over a year, the defendant used the darknet to sell drugs for profit. Though he sold numerous types of drugs, it was the defendant's advertisement for "heroin nasal spay" that attracted the attention of law enforcement. Some darknet marketplaces ban the sale of fentanyl because it is too dangerous, but will allow the sale of heroin. Among individuals who use and sell drugs, however, a language has developed such that advertisements such as the defendant's signal that he is offering fentanyl or fentanyl analogues for sale. The agent's instincts were right—over the course of four undercover purchases, an undercover officer in Colorado purchased fentanyl and

1

various fentanyl analogues from the defendant on the darknet.

Though actors on the darknet take steps to obfuscate their identities, agents were able to determine that the defendant was operating the various darknet monikers at issue and executed a search warrant at his home on February 25, 2020.  During that search warrant, officers seized from the defendant's home items indicative of drug trafficking such as nasal spray bottles; shipping supplies such as USPS mailing envelopes, labels with tracking numbers, and packaging materials; and mylar bags used for packaging drugs.  Officers also located methamphetamine and alprazolam.

The defendant spoke with officers during the search warrant and admitted to selling drugs on the darknet.  Throughout his interactions with the officers, the defendant was polite, respectful, and cooperative.

## Procedural History

The defendant was arrested in California on or about February 25, 2020 based on allegations in a criminal complaint.  [PSR p. 2].  He was indicted in the District of Colorado on March 12, 2020, in four counts, all related to the sale of narcotics on the darknet.  [ECF #7].  The defendant pled guilty to Count One of the indictment with the benefit of a plea agreement on August 26, 2021.  [ECF #32].

The defendant has been in custody since his arrest.

## Guidelines Calculation

In the plea agreement, the parties agreed that the defendant is responsible for converted drug weight of 2,184.31 kg.  The PSR's drug weight computation of 2,184.68 kg of converted drug weight is nearly identical.  Comparing the plea agreement to the PSR, it appears that most of the small discrepancy can be explained by: (1) rounding

error, and (2) the failure of the plea agreement to assign converted drug weight to flualprazolam.  In any event, in both the PSR and the plea agreement, pursuant to U.S.S.G. § 2D1.1(c)(5), the defendant's base offense level is 30.

The parties and the PSR also agree that a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(7) is appropriate because the defendant distributed a controlled substance through mass-marketing by means of an interactive computer service—here, the various darknet marketplaces on which the defendant sold drugs.

The parties disagree with the PSR, however, as to whether the two-level enhancement for maintaining a premises for purposes of manufacturing or distributing a controlled substance applies pursuant to U.S.S.G. § 2D1.1(b)(12).  PSR ¶ 81.  As the defendant noted in his response the PSR, the parties concede that whether this enhancement applies given the facts of this case is a close call.  [ECF # 38 ¶ 4].  On balance, the Government agrees with the defendant's assessment in his response to the PSR.  In particular, as the defendant noted, there is no evidence of sales from the defendant's home; the evidence of sales at all is fairly insubstantial in volume and quantity; the drugs discovered in the defendant's home were also not of particularly significant quantity; and law enforcement's insight into the defendant's home spans only the day of the search warrant execution.

This is not to say that the home of a darknet vendor can never be the basis for an enhancement pursuant to U.S.S.G § 2D1.1(b)(7).  And the Government acknowledges and appreciates the Probation Department's careful and thoughtful analysis of the issue.  But, in this case, the Government stands by its plea agreement and does not ask the court to apply this two-level enhancement.

Accordingly, in the Government's view, the defendant's total offense level is 29. At criminal history category III, the defendant's Guidelines range is 108-135 months imprisonment with a 60-month mandatory minimum.

Application of the 18 U.S.C. § 3553(a) Factors

A. *Nature and Circumstances of the Offense*

The PSR notes, and the Government acknowledges, that the quantities of drugs that the defendant sold to the undercover officer on four different occasions were not the same kilogram-level quantities for which many federal defendants are responsible. But that does not make the defendant's crime any less serious, dangerous, or damaging to the community. Rather, the defendant positioned himself to sell to end-users and, specifically, to end-users of opioids like heroin and fentanyl. In other words, the defendant's sales were likely fueling the addiction of others like him.

That the defendant sold fentanyl for so long is particularly egregious because the defendant—an experienced opioid user with substantial tolerance—overdosed on his own product on numerous occasions. PSR ¶ 116. There is no evidence that the defendant's darknet sales caused any overdose deaths. But the risk of such an outcome was real, substantial, and known to the defendant.

In sum, end-of-the-line drug dealers like the defendant are as culpable as individuals upstream dealing in larger quantities. In some ways, the defendant's conduct is even more egregious than an individual who was caught once or twice with kilograms of narcotics. Here, the defendant sold drugs for over a year and cannot claim that he had a once-time lapse of judgment. Without dealers like the defendant—or his street corner counterpart—the drugs never get to the users and addicts.

B. *History and Characteristics of the Defendant*

In the Government's view, the defendant's long-time addiction to drugs cuts both ways. On the one hand, unfortunate circumstance beyond the defendant's control set the defendant on a downward spiral until he was depressed, addicted, and unable to see a path out. The Government credits the defendant's account of his difficult childhood and the trauma associated with his father's death. On the other hand, addicts like the defendant who deal to other addicts know better than anyone else the damage they cause to drug users, their families, and their communities.

Moreover, the instant case is not the defendant's first contact with the criminal justice system for drug-related conduct. Rather, in 2012, he was convicted of possession of a controlled substance while armed, a felony, and sentenced to a year in prison. PSR ¶ 96. It is the Government's sincere hope that the defendant's experience in the federal system—and the accompanying longer sentence—does what his first conviction did not, and nudges the defendant to a law-abiding, sober life.

C. *The Need for the Sentence to Achieve the Aims of 18 U.S.C. § 3553(a)(2)*

The requested sentence will also reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, provide deterrence to criminal conduct, and protect the public from further crimes of the defendant.

Individuals selling drugs on the darknet avoid many of the downsides to traditional drug dealing: they can obfuscate their identities from law enforcement; they are safer from would-be robbers; sales can take place from the comfort of their homes; and being paid in cryptocurrency means that they avoid having stores of cash on hand. Because of this, darknet drug sales have soared and deterrence—both general and

specific—is a paramount aim of sentencing.

Further, as noted herein, the defendant's crime was extremely serious. A sentence within the Guidelines range will serve to reflect this seriousness and provide just punishment for the defendant's actions.

## Conclusion

The Government respectfully requests that the Court sentence the defendant to 108 months' imprisonment to be followed by four years of supervised release.

Respectfully submitted this 4th day of November, 2021.

>
> MATTHEW T. KIRSCH
> Acting United States Attorney
>
> By:   s/ Andrea Surratt
>       Andrea Surratt
>       Assistant United States Attorney
>       U.S. Attorney's Office
>       1801 California St., Suite 1600
>       Denver, CO 80202
>       Telephone: (303) 454-0100
>       e-mail:  Andrea.Surratt@usdoj.gov
>       Attorney for the Government